295 F.2d 140
 PUBLIC SERVICE COMMISSION OF the STATE OF NEW YORK, Petitioner,
v.
FEDERAL POWER COMMISSION, Respondent,
Shell Oil Company, South Texas Natural Gas Gathering Company, Intervenors.
PUBLIC SERVICE COMMISSION OF the STATE OF NEW YORK, Petitioner,
v.
FEDERAL POWER COMMISSION, Respondent.
 No. 15366.
 No. 15854.
 No. 15910.
 United States Court of Appeals District of Columbia Circuit.
 Argued March 13, 1961.
 Decided June 15, 1961.
 Petitions for Rehearing Denied August 3, 1961.
 Certiorari Denied December 18, 1961.
 
 See 82 S.Ct. 388.
 Mr. Kent H. Brown, Albany, N. Y., with whom Mrs. Barbara M. Suchow, New York City, was on the brief, for petitioner.
 Mr. Howard E. Wahrenbrock, Solicitor, Federal Power Commission, with whom Messrs. John C. Mason, Gen. Counsel, Federal Power Commission, Robert L. Russell, Asst. Gen. Counsel, Federal Power Commission, and David J. Bardin, Atty., Federal Power Commission, were on the brief, for respondent.
 
 
 1
 Mr. Oliver L. Stone, New York City, for intervenor, Shell Oil Co., in No. 15366. Mr. John H. Pickering, Washington, D. C., also entered an appearance for intervenor, Shell Oil Co., in No. 15366.
 
 
 2
 Messrs. Bradford Ross and David I. Granger, Washington, D. C., were on the brief for intervenor, South Texas Natural Gas Gathering Co., in No. 15366.
 
 
 3
 Messrs. Robert E. May and Richard F. Generelly, Washington, D. C., filed a brief on behalf of Hassie Hunt Trust, and others, as amici curiae, in No. 15854.
 
 
 4
 Messrs. Robert M. Scott, Washington, D. C., and Leon M. Payne, Houston, Tex., filed a brief on behalf of Coastal Transmission Corp. and Houston Texas Gas and Oil Corp., as amici curiae, in No. 15910.
 
 
 5
 Before EDGERTON, FAHY and DANAHER, Circuit Judges.
 
 
 6
 FAHY, Circuit Judge.
 
 
 7
 These petitions for review of orders of the Federal Power Commission, herein usually referred to as the Commission, involve the effort of the Public Service Commission of the State of New York, herein referred to as PSC, to intervene in three separate proceedings before the Commission.[1] The petitions are filed pursuant to section 19(b) of the Natural Gas Act.[2]
 
 
 8
 The Commission proceedings were on applications filed by independent producers of natural gas for certificates of public convenience and necessity to sell natural gas for transportation and resale in interstate commerce under section 7 (c) and (e) of the Natural Gas Act.[3] None of the gas was to come into New York State, but in denying intervention the Commission assumed the truth of PSC's allegations that the fields from which the gas originates, namely, Texas Railroad Districts 2, 3 and 4 and the southern Louisiana fields, are important sources of supply for the three pipelines serving New York. It is the position of PSC that the price of the New York gas would be affected by the price authorized to be charged in the certificates applied for.
 
 
 9
 In each proceeding PSC filed a notice of intervention, the principal part of which reads as follows:
 
 
 10
 "Notice of Intervention
 
 
 11
 "The Public Service Commission of the State of New York, a regulatory body of the State of New York having jurisdiction to regulate rates and charges for the sale of natural gas within said State, hereby gives notice that it intervenes in these proceedings."
 
 
 12
 The denial of intervention in each case was followed by petition to the Commission for reconsideration, and after its denial timely petition to this court for review.[4]
 
 
 13
 The position of the Commission is that PSC was entitled to intervene only upon showing an interest over and above that evidenced by the filing of a notice of intervention, and that it failed to make such a showing. The Commission relies primarily upon the decision of this court in Memphis Light, Gas & Water Div. v. Federal Power Comm., 100 U.S.App.D.C. 205, 243 F.2d 628. That case, however, arose on petition of a private company to intervene. Upon consideration of the provisions of the Act and the rules governing intervention by private interests this court held the Commission had not erred in denying intervention. It was not necessary to consider the rules governing intervention of state regulatory commissions. The reason for the Commission's reliance in the present case upon Memphis is unclear to us.
 
 
 14
 The statutory provisions governing intervention are in section 15(a) and (b) of the Natural Gas Act:
 
 
 15
 "(a) * * * In any proceeding before it, the Commission in accordance with such rules and regulations as it may prescribe, may admit as a party any interested State, State commission, municipality or any representative of interested consumers or security holders, or any competitor of a party to such proceeding, or any other person whose participation in the proceeding may be in the public interest.
 
 
 16
 "(b) All hearings, investigations, and proceedings under this Act shall be governed by rules of practice and procedure to be adopted by the Commission * * *."[5]
 
 
 17
 The Act is thus phrased in permissive terms. The permission, however, is to be controlled by such "rules and regulations as it [the Commission] may prescribe." All hearings, investigations and proceedings are to be governed by "rules of practice and procedure to be adopted by the Commission." The cases before us naturally are governed by the Commission rules. They were first published in the Federal Register in 1947 and provide as follows:
 
 
 18
 "§ 1.8 Intervention
 
 
 19
 "(a) Initiation of intervention. Participation in a proceeding as an intervener may be initiated as follows:
 
 
 20
 "(1) By the filing of a notice of intervention by a State Commission, including any regulatory body of the State or municipality having jurisdiction to regulate rates and charges for the sale of electric energy, or natural gas, as the case may be, to consumers within the intervening State or municipality."[6]
 
 
 21
 We read this language as meaning what it says; it grants permission to a State Commission to participate as intervener by filing a notice of intervention. No application to be acted on by the Commission is required. A State Commission initiates its own participation as intervener in behalf of consumers within the "intervening State." This appears not only from the language of section 1.8(a) (1) but by contrasting with it the provisions immediately following in section 1.8(a) (2), governing intervention of parties other than State Commissions. Such parties may intervene only on "order of the Commission upon petition to intervene." The order is to be sought on petition filed "by any person claiming a right to intervene or an interest of such nature that intervention is necessary or appropriate to the administration of the statute under which the proceeding is brought." Provision is made for answer to the petition, and the Commission in due course will grant or deny the petition, in whole or in part, or may authorize limited participation. Under these detailed provisions the petitions are required to be acted upon one way or another by the Commission. This is in sharp contrast with the rules applicable to a State Commission. There is no requirement of a petition to intervene, or answer thereto or action thereon by the Federal Commission granting a petition in whole or in part or allowing limited participation. Intervener status is acquired by the filing of a notice of intervention. And insofar as we are advised the Commission never, prior to our Memphis decision, sought to apply its rules to require a State Commission, in order to intervene, to do more than file a notice of intervention. This approach to the matter no doubt emanated from the Commission's faith that public service commissions, public bodies with public responsibilities, would not abuse the right granted.
 
 
 22
 The difference between public and private parties in the method of obtaining intervener status is emphasized by the "Definition" of "Interveners" contained in the Commission's rules, which reads:
 
 
 23
 "Persons petitioning to intervene as provided by § 1.8, when admitted as a participant to a proceeding, and State Commissions giving notice of intervention as provided in said section, are styled interveners."[7]
 
 
 24
 This provision again makes clear that in the case of a State Commission intervener status is acquired by filing a notice of intervention, whereas others become interveners on petition "when admitted as a participant to a proceeding."
 
 
 25
 The section of the rules adopted to carry out the policy of the Act authorizing cooperation between the Federal Commission and State Commissions is also pertinent.[8] These rules, in detailed fashion, exemplify the Commission's desire to make effective the solicitude of Congress for cooperation between State Commissions and the Federal agency. These rules are under the heading of cooperation, not of intervention, but the very last subdivision provides:
 
 
 26
 "(f) Intervention by State commissions. Any interested State commission may, as a matter of right, intervene in any proceeding before the Federal Power Commission, as provided in § 1.8."[9]
 
 
 27
 The "interested State commission" thus referred to is a State Commission interested in utilizing the cooperative procedures of the Act. Such a State Commission may intervene as of right, as provided in section 1.8, that is, by filing a notice of intervention. No petition for intervention or action thereon is required.
 
 
 28
 We are cited to no instance of abuse of the right. Indeed, the present position of the Commission, as we have suggested, seems to have been due to a misinterpretation of the Memphis decision, which dealt with the effort of a private party to intervene under the provisions of section 1.8(a) (2).
 
 
 29
 The essence of the matter is that under the present rules the interest of a State Commission in intervening is shown when it files a notice of intervention, whereas the interest of a non-public entity must be established on petition to the Commission for permission to intervene under the procedures of section 1.8(a) (2) and 1.8(b), eventuating in an order of the Commission. Whether or not experience has shown that the right granted to a State Commission should be subject to controls similar to those applicable to others is not for us to decide, for the present cases are governed by the present rules. Bell v. United States, 366 U.S. 393, 81 S.Ct. 1230, 6 L.Ed.2d 365; Service v. Dulles, 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403; Vitarelli v. Seaton, 359 U.S. 535, 79 S. Ct. 968, 3 L.Ed.2d 1012; Chapman v. Sheridan-Wyoming Coal Co., 338 U.S. 621, 629, 70 S.Ct. 392, 94 L.Ed. 393; McKay v. Wahlenmaier, 96 U.S.App.D.C. 313, 321, 226 F.2d 35, 43.
 
 
 30
 The orders under review will be set aside and the cases remanded for such further proceedings as are not inconsistent with this opinion.[10]
 
 
 31
 It is so ordered.
 
 
 
 Notes:
 
 
 [1]
 In our No. 15366, entitled before the Commission, Texas Illinois Natural Gas Pipeline Co., et al., five independent producers of natural gas (Shell, Hargrave, Sunray, Union, and Bettis & Shepard) and one gas gathering company (South Texas) sought FPC certificates of public convenience and necessity authorizing sales of natural gas for resale in interstate commerce. The natural gas involved was to be produced, sold and delivered to the ultimate purchaser, Texas Illinois, within Railroad District 4 in Texas, and then transported in Texas, Arkansas, Missouri and Illinois for ultimate consumption in the Chicago area
 In our No. 15854, entitled before the Commission, Peoples Gulf Coast Natural Gas Pipeline Co. et al., Peoples requested additional authority for the construction of pipeline facilities and seven independent producers requested FPC certificates of public convenience and necessity authorizing sales of natural gas to Peoples, an interstate pipeline company serving markets in the State of Illinois. The gas involved in this proceeding was to be gathered in Texas Railroad Districts 2, 3 and 4.
 Our No. 15910, entitled before the Commission, Coastal Transmission Corp. et al., involved proposed producer sales of natural gas from Texas Railroad Districts 2, 3 and 4 and also proposed sales from fields in southern Louisiana. The natural gas under consideration was destined for ultimate resale and consumption in Florida.
 
 
 [2]
 52 Stat. 831 (1938), 15 U.S.C. § 717r (b) (1958), 15 U.S.C.A. § 717r(b)
 
 
 [3]
 56 Stat. 83, 84 (1942), 15 U.S.C. § 717f(c, e) (1958), 15 U.S.C.A. § 717f (c, e)
 
 
 [4]
 In No. 15366 the notice of intervention was filed March 16, 1959. On March 26, 1959, the Commission issued an order denying intervention pending further order but granting limited participation to permit PSC to show the interest on which it based its claim to intervene. PSC's application to the Commission for subpoenas to enable it to show that interest, as it claimed, was denied April 27, 1959. PSC timely applied for reconsideration, which was denied July 16, 1959, followed by petition for review filed with this court September 14, 1959. In its application for subpoenas and for reconsideration PSC consistently maintained that it acquired intervenor status by the filing of the notice of intervention. In No. 15854 the PSC filed notice of intervention on February 10, 1960. The Power Commission on March 21, 1960, issued an order denying intervention, followed April 20, 1960, by PSC's application for rehearing and reconsideration. This was denied May 5, 1960, and PSC's petition for review was filed with this court July 1, 1960. In No. 15910 PSC filed its notice of intervention December 31, 1959. The Commission on March 31, 1960, issued an order denying participation by PSC as an intervenor. PSC applied on May 2, 1960, for rehearing and reconsideration, which was denied May 31, 1960, followed by petition to this court for review filed July 29, 1960
 
 
 [5]
 52 Stat. 829 (1938), 15 U.S.C. § 717n(a, b) (1958), 15 U.S.C.A. § 717n(a, b)
 
 
 [6]
 18 C.F.R. § 1.8 (1949)
 
 
 [7]
 18 C.F.R. § 1.1(f) (13) (1949). The "Definition" continues: "Admission as an intervener shall not be construed as recognition by the Commission that such intervener might be aggrieved by any order of the Commission in such proceeding." This has no bearing on who is an intervener before the Commission, or on how intervention is acquired. It has to do with court review of Commission orders
 
 
 [8]
 18 C.F.R. § 1.37 (1949)
 
 
 [9]
 18 C.F.R. § 1.37(f) (1949)
 
 
 [10]
 No. 15366 was before this court in Public Service Comm. of State of New York v. Federal Power Comm., 109 U.S. App.D.C. 66, 284 F.2d 200, where it was held that PSC's right of review was limited to review of the order denying intervention notwithstanding the Commission proceedings had eventuated in a final decision on the merits. Compare Virginia Petroleum Job. Ass'n v. Federal Power Comm., 104 U.S.App.D.C. 106, 259 F.2d 921. We consider this earlier decision as the law of the case insofar at least as No. 15366 is concerned. Moreover, none of the parties to No. 15366 or to Nos. 15854 or 15910, all consolidated, now press any question as to the correctness of the previous decision in No. 15366
 DANAHER, Circuit Judge.
 I concur in the result reached by my colleagues but for a different reason.
 Public Service Commission of the State of New York insists, and my colleagues seem to agree, that the N.Y. Commission was here entitled to intervene as of right simply by giving notice "that it intervenes in these proceedings." I think even a State or State Commission must make some showing that it is "interested," but that the N. Y Commission on the record here sufficiently alleged the requisite basis for its interest.
 Section 15 of the Act[1] provides: "In any proceeding before it, the [Federal Power] Commission in accordance with such rules and regulations as it may prescribe, may admit as a party any interested State, State Commission * * *" or others named. (Emphasis added.)
 That language, as I read it, plainly grants to the Commission a discretion, the exercise of which turns upon whether or not any State or State Commission demonstrates itself to be "interested" in the pending proceeding. The Commission's regulations should be read in that context, it seems to me.
 Thus we turn to the Commission's Rule 1.8[2] which first outlines how participation in a "proceeding"[3] may be "initiated" by a prospective "intervener."[4] The N. Y. Commission properly "initiated" its proposed participation by the filing of the required notice of intervention. The Commission, agreeably to the statute, at that point may require a showing as to whether or not continued participation as a party is to be permitted, and to what extent. If a State Commission shows itself genuinely to be "interested," it is to be accorded the status of an intervener. It may be permitted to participate on a limited basis, to the extent it shows itself to be "interested." I think the rules and the statute must be read together, and if a State Commission can make no showing that it is "interested," continued participation in the proceeding may be terminated.
 My colleagues seem to say that the N. Y. Commission, simply because it is a State regulatory body, has a "right" to intervene in a proceeding involving producers' rates, say in Oklahoma, as to gas to be delivered in Detroit. By parity of reasoning, the Commission would be bound to admit any and all regulatory bodies to whom reference is made in Rule 1.8(a) (1). Surely each such body should be required to demonstrate an interest. I find myself unable to accept the proposition that the already overburdened Commission is bound to accept as a party every State and municipal regulatory body which has jurisdiction to regulate rates to consumers "within the intervening State or municipality."
 Here, and on this record, I am satisfied that the N. Y. Commission actually demonstrated a valid interest, one of which the Commission was made well aware. For example, in Case No. 15,910, the Commission's order denying the N. Y. Commission's application for rehearing and reconsideration of the order denying intervention recited:
 "PSC [N. Y. Commission] does inform us that its interests arise out of the fact that it is served by pipeline companies which purchase supplies of natural gas in the same Texas and Louisiana production areas involved herein, and by its application, PSC specifically contends that:
 "`* * * unconditional certification of these sales at the proposed initial prices will adversely affect ultimate consumers in the New York market area (1) by further entrenching "out of line" prices as the producing area bargaining floor for future gas purchase negotiations by New York-serving pipelines; and (2) by furnishing additional high price points of reference to be used in redetermining prices under clauses for that purpose contained in numerous gas purchase contracts of New York-serving pipelines.'"
 I believe the foregoing succinctly outlines the nature of the situation which made the N. Y. Commission "interested," particularly in light of the spirit of "Catco," Atlantic Rfg. Co. v. Pub. Serv. Comm., 1959, 360 U.S. 378, 391, 79 S.Ct. 1246, 3 L.Ed.2d 1312.
 Under the circumstances, I concur in the result, for I think the Commission here erred when it denied intervention since the N. Y. Commission's representations were sufficient to demonstrate a proper basis for further participation.
 Notes:
 
 
 [1]
 15 U.S.C.A. § 717n
 
 
 [2]
 18 C.F.R. § 1.8 (1958), as quoted in Judge FAHY'S opinion
 
 
 [3]
 As defined in 18 C.F.R. § 1.1(f) (18) (1958)
 
 
 [4]
 As defined in 18 C.F.R. § 1.1(f) (13) (1949)
 On Petitions for Rehearing.
 FAHY, Circuit Judge.
 The Power Commission and the intervenor Shell Oil Company raise in petitions for rehearing several matters which call for discussion.
 The Commission points out that the Memphis Light, Gas and Water Division, the party denied intervention in Memphis Light, Gas & Water Division v. Federal Power Comm., 100 U.S.App.D.C. 205, 243 F.2d 628, 634, was not a private company whose intervention rights were considered only under the Act and rules governing intervention by private interests. We accept this correction. The Division was established under Chapter 381 of the Private Acts of the General Assembly of the State of Tennessee for the year 1939, authorizing the construction and operation of municipally owned utilities by the City of Memphis, and for related municipal purposes. The Division in that manner became a city agency for a city system, with authority in a Board of Light, Gas and Water Commissioners to make a schedule of rates for the water, gas and power services to the customers of the Division. The Division had a proprietary function, and though in this manner its own rates were made, it was not, even in a limited local sense, a public utility commission with authority as such to regulate rates. There is accordingly some question whether the Division should be considered a "regulatory body" within the meaning of Rule 1.8(a) (1). The difference between the Division and such a regulatory body as PSC no doubt accounts for the opinion in Memphis treating the Division principally as though it were a private party. The opinion does contain, however, the paragraph we now set forth in the margin.[1] We do not apply this portion of the Memphis opinion in a manner to take PSC out of the coverage of section 1.8(a) (1). In so holding we recognize that when the Commission was considering the present case it could with reason consider that Memphis supported denial of intervention to PSC under section 1.8(a) (1). But this does not seem to us to be crucial. The crucial question is, rather, whether PSC was entitled to intervenor status on filing notice of intervention. If PSC gained such status by the notices filed, then PSC should have been recognized as an intervenor.
 The Power Commission contends that, assuming arguendo the correctness of our construction of section 1.8(a) (1) in its application to PSC, nevertheless the Commission was not required to comply with this section of its rules, that is, the Commission is not a slave to its own rules. The Commission cites for this proposition the cases we set forth at this point in the margin.[2] Such a general principle does not decide this particular case. Of course a court as well as an administrative agency may waive certain of its procedural rules, and, as the cited cases illustrate, rules of procedure have been held in some circumstances not binding upon the agency. In the case before us, however, the Commission did not decide not to apply a procedural rule. It decided the rule with which PSC complied did not govern its intervention rights, quite a different thing. It decided that under its rules, promulgated under express statutory provision for the governance of procedure, the New York State Commission did not acquire intervenor status by filing notice of intervention. In this, for the reasons explained in our main decision, we think the Power Commission was mistaken.
 The Commission's rules governing intervention were adopted, in 1947, apparently in deference to the position of public regulatory bodies in the total congressional plan envisaged by the statute. Of course these rules of procedure may be changed; but we think the Commission may not leave in effect section 1.8 (a) (1) and at the same time deny PSC the status the rule gives a State Commission which complies with it. Certainly no bad faith is suggested as attributable to PSC in intervening in these proceedings in the fulfillment of its own responsibilities to consumers in New York State, nor is there any suggestion of abuse.
 The petitions for rehearing are denied.
 DANAHER, Circuit Judge, adheres to the position stated in his concurring opinion.
 Notes:
 
 
 [1]
 This paragraph of the Memphis opinion reads:
 "As new matter in the petition for rehearing [before the Commission], it was argued for the first time, that Memphis Division, a city department for the sale and distribution of gas, is a `regulatory' body, within the meaning of the Commission's Rule. Aside from the fact that Memphis had previously alleged and argued its position as a city gate customer of Texas Gas, which it seems to be, the Memphis Division was still bound under Section 15(a) of the Natural Gas Act to make a showing that would call for exercise of the Commission's discretion permitting intervention."
 100 U.S.App.D.C. at pages 211-212, 243 F.2d at pages 634-635. (Footnotes omitted.)
 
 
 [2]
 Sun Oil Co. v. Federal Power Comm., 5 Cir., 1958, 256 F.2d 233, 239, certiorari denied, 258 U.S. 872, 79 S.Ct. 111, 3 L.Ed. 2d 103; National Labor Relations Board v. Grace Co., 8 Cir., 1950, 184 F.2d 126, 129