334 F.2d 474
 HUNT OIL COMPANY, Petitioner,
v.
FEDERAL POWER COMMISSION, Respondent (two cases).
Hassie HUNT TRUST et al., Petitioners,
v.
FEDERAL POWER COMMISSION, Respondent.
PLACID OIL COMPANY, Petitioner,
v.
FEDERAL POWER COMMISSION, Respondent (two cases).
 No. 19218.
 No. 19499.
 No. 19500.
 No. 20202.
 No. 20204.
 United States Court of Appeals Fifth Circuit.
 May 28, 1964.
 Rehearing Denied August 5, 1964.
 
 Robert E. May, Washington, D. C., Robert W. Henderson, Dallas, Tex., Richard F. Generelly, Washington, D. C., Thomas G. Crouch, Dallas, Tex., for petitioner Hunt Oil Co.
 Howard E. Wahrenbrock, Sol., Arthur H. Fribourg, Milton J. Grossman, Josephine H. Klein, Attys., Richard A. Solomon, Gen. Counsel, F.P.C., Washington, D. C., for respondent.
 Thomas G. Crouch, Robert W. Henderson, Dallas, Tex., Robert E. May, Richard F. Generelly, Washington, D. C., Robert M. Kennedy, Dallas, Tex., John T. Ketcham, May, Shannon & Morley, Washington, D. C., for petitioners Hassie Hunt Trust and others.
 Paul W. Hicks, W. Scott Wilkinson, Shreveport, La., for petitioner Placid Oil Co.
 Before RIVES, BELL and WRIGHT,* Circuit Judges.
 J. SKELLY WRIGHT, Circuit Judge:
 
 
 1
 These five consolidated cases concern Section 7(c)[1] permanent certificates covering the interstate movement of natural gas. The certificates were vacated by the Federal Power Commission after the United States Court of Appeals for the District of Columbia Circuit held that the Public Service Commission of New York should have been allowed to intervene in the Section 7 proceedings.[2] Nos. 19,499 and 19,500 challenge the right of the Commission to vacate the certificates without hearing and to issue, in place thereof, temporary authorization subject to a refund condition. Nos. 20,202 and 20,204 question the Commission's rejection of price increases in conflict with the no-increase-in-price condition of the temporary authorization. No. 19,218 involves the validity of the Commission's rejection of a rate increase in conflict with a condition in one of the permanent certificates before it was vacated. We affirm the action of the Commission in all five cases.
 
 
 2
 In 1959 the Natural Gas Pipe Line Company applied for a certificate of public convenience and necessity authorizing expansion of its facilities. At the same time petitioners, independent producers of natural gas, sought certificates authorizing the sale to Natural of gas produced in Railroad Districts 2, 3 and 4 of Texas. In the § 7 proceedings that followed, the Commission upheld petitioners' objection to the intervention of Public Service Commission of New York and thereafter granted the permanent certificates, subject to certain conditions. Peoples Gulf Coast Natural Gas Pipeline Co., 24 FPC 1 (1960). In fixing the certificate price for the gas, the Commission was influenced by the high price level set in its Continental Oil Company proceeding, 17 FPC 563 (1957) and 17 FPC 732 (1957), a price level previously found unsupported and out of line in Atlantic Refining Co. v. Public Serv. Comm'n, 360 U. S. 378, 79 S.Ct. 1246, 3 L.Ed.2d 1312 (1959) (CATCO).
 
 
 3
 On the day the permanent certificates in suit were issued, P.S.C. of N.Y. petitioned the District of Columbia court for review of the Commission's order denying intervention. That court set aside the Commission's order denying P.S.C. of N.Y.'s intervention and remanded the intervention proceeding to the Commission. Pursuant to the remand, the Commission allowed P.S.C. of N.Y.'s intervention, vacated its certification order, and, on November 2, 1961, issued temporary authorizations for continuation of the producers' sales pending redetermination of the certificate applications in the reopened proceedings. Hassie Hunt Trust, 26 FPC 689 (1961), 26 FPC 930 (1961). The temporary authorizations stipulated that the initial prices set in the vacated certificates should remain in effect, without being increased, during the reopened proceedings, subject to a refund to Natural of "any amounts collected after the date of issuance of this order in excess of the amount computed at the rate determined to be required by the public convenience and necessity" in the final certificate order. 26 FPC at 690. Subsequently, in August, 1962, petitioners filed rate increases on sales then being made pursuant to the temporary authorization. The Commission rejected these tendered filings as unauthorized under the petitioners' operating authority.
 
 
 4
 Apparently because of CATCO and its progeny,[3] petitioners do not defend the original certificate order as reflecting the § 7 requirement of "public convenience and necessity." They maintain, however, that this order was "presumptively valid" and should not have been vacated until P.S.C. of N.Y. had successfully undertaken its burden, after its right to intervene in the § 7 proceedings was upheld by the District of Columbia court, of proving substantive error in the original order as well as the affirmative requirements of the public interest.
 
 I.
 
 5
 The propriety of the Commission's action in vacating its original certificate order must be determined by reference to the court decision upholding the right of P.S.C. of N.Y. to intervene in the proceedings. At the time of that decision, the certificates, although not before the court, had already been issued. The question presented is whether the court intended that those certificates be vacated in order that P.S.C. of N.Y. be allowed to participate in the vindication of the public interest. We think that the court's decision not only authorized but required the Commission to set aside its order and vacate the certificates.
 
 
 6
 Initially, it is difficult to understand how a litigant, P.S.C. of N.Y. in this case, can adequately exercise its rights as a party to a proceeding without being given an opportunity to participate fully therein. Participation in a proceeding as a party usually includes the right to be present, the right to present witnesses, to cross-examine witnesses presented by the other parties, and generally to support by argument and brief the position it would have the Commission adopt. Here, however, we need not rely on this general understanding as to the rights of a party, because it is clear from the District of Columbia court's opinion, considered in the light of its prior ruling in the consolidated cases with which P.S.C. of N.Y.'s case was heard, that vacation of the certificates was required.
 
 
 7
 In the prior litigation, the District of Columbia court, speaking through its then Chief Judge Prettyman, explained the effect of an order upholding the right of a party to intervene in Commission proceedings:
 
 
 8
 "* * * If a person has applied for intervention in a proceeding and been denied intervention, and has validly brought the order of denial to this court for review, the administrative agency cannot destroy the jurisdiction of this court by simply taking final action in the proceeding, the would-be intervenor being absent from that proceeding. * * *
 
 
 9
 "* * * If it be decided upon the merits * * * that the order denying intervention was in error and that the New York Commission should have been allowed to intervene in the opening stages of the proceeding before the Federal Commission, it will follow that the proceeding before the Commission would have to be reopened to permit the New York Commission to become a full participant in the proceeding and to present whatever evidence and argument it might choose to present, thus rendering moot the petition to review what had been the final order * * *. * * *" (Emphasis added.)
 
 
 10
 Public Service Com'n of N.Y. v. Federal Power Com'n, 109 U.S.App.D.C. 66, 72, 284 F.2d 200, 206 (1960). In that proceeding the court denied a motion to dismiss a petition seeking review of the denial of intervention. Shortly thereafter P. S.C. of N.Y.'s petition for review of the Commission's order denying its right to intervene here was consolidated with the intervention cases retained by the court in the prior litigation. When the court later decided in the consolidated proceedings, Public Serv. Com'n of State of N.Y. v. Federal Power Com'n, supra Note 2, that P.S.C. of N.Y. was entitled to intervene, the earlier language quoted above became applicable to this case. Since the certificate order itself was not before the court in the intervention proceedings, it could not be vacated therein. The court remanded the intervention proceedings to the Commission "for such further proceedings as are not inconsistent with this opinion." 111 U.S.App.D.C. at 157, 295 F.2d at 144. Thus it became the duty of the Commission to vacate its order "to permit the New York Commission to become a full participant" in the reopened proceedings. Public Service Com'n of N.Y. v. Federal Power Com'n, supra, 109 U.S.App.D.C. at 72, 284 F.2d at 206.
 
 
 11
 If there were any doubt, after the first P.S.C. of N.Y. case, 109 U.S.App.D.C. 66, 284 F.2d 200, as to what the District of Columbia court intended to be the result of its upholding the right of a party to intervene before an administrative agency, that doubt was dispelled in Interstate Broadcasting Company v. United States, 109 U.S.App.D.C. 255, 259, 286 F.2d 539, 543 (1960), when the court, in holding an F.C.C. order denying intervention immediately reviewable, stated that if review were postponed until the end of the administrative proceeding, "a decision that the appellant was entitled to intervene would require duplication of the entire administrative proceeding." Interstate was approved and followed by the Second Circuit in American Communications Association v. United States, 2 Cir., 298 F.2d 648, 650 (1962), where Chief Judge Lumbard said: "Arguments against piecemeal review are outweighed by the desirability of avoiding the waste that would result from requiring a second complete hearing with the intervenor present."
 
 
 12
 In any event, it can hardly be questioned that under the circumstances of this case, on remand of the intervention proceedings, the Commission was justified, as a matter of discretion, particularly in view of the history of the CATCO cases, in vacating the certificates and reopening the § 7 proceedings to determine anew, in the light of the teachings of the Supreme Court and the various Courts of Appeals,[4] what in fact was the public convenience and necessity with respect to the sales in suit.
 
 
 13
 P.S.C. of N.Y. sought intervention in order to "argue to the Commission" that "the record does not support the unconditional certification of the proposed prices." By the time the present proceeding had been remanded to the Commission by the District of Columbia court, prices set with reference to the CATCO plateau had been rejected by several Courts of Appeals,[5] including this court. Thus the history connected with the CATCO plateau placed a heavy burden upon the petitioners to show that the contract prices in the certificates in suit were in line. CATCO, supra, 360 U.S. at 391, 79 S.Ct. 1246. They have not met this burden, and there is no basis on which the public convenience and necessity could justify the retention of these certificates.
 
 
 14
 Petitioners further suggest that P.S.C. of N.Y., in view of the fact that none of the gas covered by the certificates here involved was sold in New York, is not a party "interested or aggrieved" within the terms of §§ 15(a)[6] and 19[7] of the Act and therefore may not petition this court for review of the Commission's proceedings. As shown in Public Serv. Com'n of State of N.Y. v. Federal Power Com'n, supra Note 2, this suggestion is entirely without merit.
 
 II.
 
 15
 Petitioners also argue that the Commission was without authority to issue the temporary certificates with the refund and no-increase-in-price conditions. The Supreme Court, on March 30, 1964, in Federal Power Commission v. H. L. Hunt et al., 376 U.S. 515, 84 S.Ct. 861, 11 L.Ed.2d 878, reversing this court, Hunt v. Federal Power Commission, 5 Cir., 306 F.2d 334 (1962), held that the Commission was authorized under § 7(c) and (e) of the Natural Gas Act to issue temporary certificates with a no-increase-in-price condition.
 
 
 16
 With reference to the refund condition, the United States Court of Appeals for the District of Columbia Circuit, in an opinion by Judge Fahy, has approved this refund condition on a temporary authority. Public Service Com'n of State of N.Y. v. Federal Power Com'n, D.C. Cir., 329 F.2d 242 (1964). It is true that the Tenth Circuit, in Sunray Mid-Continent Oil Co. v. Federal Power Com'n, 10 Cir. 270 F.2d 404 (1959), apparently has held to the contrary.[8] In addition to the rejection of Sunray by the District of Columbia court, however, this court, in Texaco, Inc. v. Federal Power Commission, 5 Cir., 290 F.2d 149, 156-157 (1961), has expressly reserved opinion as to "whether the powers of the Commission respecting the imposition of such a condition in the grant of a temporary certificate are as circumscribed as determined by the Court of Appeals for the Tenth Circuit."
 
 
 17
 The Supreme Court, in Federal Power Commission v. H. L. Hunt et al., supra, clearly indicates that the Commission's authority in issuing temporary certificates is broad enough to subject such certificates to any reasonable condition to protect the public interest. Certainly the refund provision in the temporary certificates in suit is such a condition. Actually, as in CATCO, 27 FPC 96 (1962), the Commission, by declaring the original § 7 certificate void ab initio, might have imposed a refund obligation back to the date of the initial deliveries. Instead, the Commission here merely treated the certificates as voidable and vacated them, thus limiting the refund in the temporary certificates to the date of their authorization, November 2, 1961.
 
 
 18
 Petitioners also raise the question as to the Commission's authority to grant the temporary certificates since no application had been made therefor. In connection with their applications for permanent certificates petitioners had represented to the Commission the economic emergency[9] which required their early issuance. There is no indication that, at the time the temporary certificates were issued, the emergency no longer existed. In fact, at that time, the emergency had become bilateral. Consumers were then dependent on the supplies of gas provided pursuant to the original certificates. Under the circumstances, the Commission was authorized by § 7(c) of the Act to issue temporary authorization "in cases of emergency, to assure maintenance of adequate service or to serve particular customers, without notice or hearing, pending the determination of [the] application for a certificate."
 
 
 19
 Moreover, under § 7(b) of the Act service once instituted could have been abandoned only if the Commission found "that the present or future public convenience or necessity permit[ted] such abandonment." Absent such finding the operations, having been instituted, had to continue despite petitioners' stated unwillingness to provide the service. J. M. Huber Corporation v. Federal Power Commission, 3 Cir., 236 F.2d 550, 558 (1956), cert. denied, 352 U.S. 971, 77 S.Ct. 363, 1 L.Ed.2d 324 (1957). In addition, § 16[10] of the Act confers on the Commission broad "power to perform any and all acts * * * as it may find necessary or appropriate to carry out the provisions of this Act." This section itself is sufficient to authorize the Commission, pursuant to § 7(c) of the Act, to issue temporary authorization to preserve supplies of gas on which consumers have become dependent.
 
 III.
 
 20
 No. 19,218 attacks the propriety of the Commission's rejection of an increased rate filing made by the Hunt Oil Company during the period in which Hunt was operating under the permanent certificates subsequently vacated pursuant to remand of the P.S.C. of N.Y. intervention proceedings by the District of Columbia court. Since we find herein that this permanent certificate was properly vacated by the Commission, No. 19,218 becomes moot. See Hunt Oil Company v. Federal Power Commission, 5 Cir., 306 F.2d 359 (1962).
 
 
 21
 For the reasons stated, the action of the Commission in each of these five cases is affirmed.
 
 
 22
 Affirmed.
 
 
 
 Notes:
 
 
 *
 Of the D.C. Circuit, sitting by designation
 
 
 [1]
 Natural Gas Act, Section 7(c), 52 Stat. 824, as amended 56 Stat. 83, 15 U.S.C. § 717f
 
 
 [2]
 Public Serv. Com'n of State of N. Y. v. Federal Power Com'n, 111 U.S.App.D.C. 153, 295 F.2d 140,cert. denied, sub nom. Shell Oil Co. v. Public Service Commission of New York, 368 U.S. 948, 82 S.Ct. 388, 7 L.Ed.2d 343 (1961).
 
 
 [3]
 Several Courts of Appeals, including this court and the District of Columbia Circuit, held that the Commission had erred in using the improperly certificatedCATCO prices in determining the public interest price level for initial sales, and the Supreme Court consistently denied certiorari. United Gas Improvement Co. v. Federal Power Com'n, 10 Cir., 287 F.2d 159 (1961); United Gas Improvement Co. v. Federal Power Com'n, 9 Cir., 283 F.2d 817 (1960), cert. denied, sub nom. California Company v. United Gas Improvement Co., 365 U.S. 881, 81 S.Ct. 1030, 6 L.Ed.2d 192 (1961); Public Serv. Com'n of New York v. Federal Power Com'n, 109 U.S.App.D.C. 292, 287 F. 2d 146 (1960), cert. denied, sub nom. Hope Natural Gas Co. v. Public Service Commission of New York, 365 U.S. 880, 81 S.Ct. 1031, 6 L.Ed.2d 192 (1961), and Shell Oil Co. v. Public Service Commission of New York, 365 U.S. 882, 81 S.Ct. 1030, 6 L.Ed.2d 192 (1961); United Gas Improvement Co. v. Federal Power Com'n, 5 Cir., 290 F.2d 133, cert. denied, sub nom. Sun Oil Co. v. United Gas Improvement Co., 368 U.S. 823, 82 S.Ct. 41, 7 L.Ed.2d 27 (1961); United Gas Improvement Co. v. Federal Power Com'n. 5 Cir., 290 F.2d 147, cert. denied, sub nom. Superior Oil Co. v. United Gas Improvement Co., 366 U.S. 965, 81 S.Ct. 1926, 6 L.Ed.2d 1255 (1961). Only the Third Circuit sustained such an order by the Commission, but that decision was summarily reversed by the Supreme Court. Transcontinental Gas Pipe Line Corp., 20 FPC 264, rehearing denied, 20 FPC 571 (1958) affirmed, sub nom. United Gas Improvement Co. v. Federal Power Com'n, 3 Cir., 269 F.2d 865, reversed, sub nom. Pub. Serv. Com'n of N. Y. v. F. P. C., 361 U.S. 195, 80 S. Ct. 292, 4 L.Ed.2d 237 (1959) (per curiam).
 
 
 [4]
 See Note 3, supra
 
 
 [5]
 See Note 3, supra
 
 
 [6]
 52 Stat. 829, 15 U.S.C. § 717n(a)
 
 
 [7]
 52 Stat. 831, 15 U.S.C. § 717r
 
 
 [8]
 Actually,Sunray is factually not in point. There, unlike here, the producer had not yet dedicated its gas to the interstate market. Where operation had commenced under a temporary authorization, the Tenth Circuit in the same case dismissed a petition to review its conditions. 270 F.2d at 407.
 
 
 [9]
 Petitioners' emergency representations brought the cases precisely within the Commission's regulations defining "emergencies." Regulations Under the Natural Gas Act, § 157.28(c), 18 C.F.R. § 157.28 (c). Placid represented that:
 "* * * The purchaser needed the gas for the ensuing winter season and had an option to cancel the contract if the gas were not made available within the prescribed time * * * and Petitioner's leases were being drained. * * *[9]
 "[9] In addition to the matters of Record which made it mandatory for Petitioner to accept or reject the proffered certificates at the time they were issued, Petitioner had to consider the loss of revenues by flaring casing head gas, the economics of maintaining shut-in wells, the cancellation provisions of leases, etc. These are matters of common knowledge in the industry and are familiar to this court."
 Hunt accepted the original certificates "to avoid additional loss through drainage."
 
 
 [10]
 52 Stat. 830, 15 U.S.C. § 717o.