398 F.2d 746
 76 P.U.R.3d 194
 HUNT OIL COMPANY, Placid Oil Company, A. G. Hill, Trustee
for Lamar Hunt Trust Estate, Lamar Hunt, Trustee
for William Herbert Hunt Trust Estate, Petitioners,
v.
FEDERAL POWER COMMISSION, Respondent.
 No. 25370.
 United States Court of Appeals Fifth Circuit.
 July 29, 1968.
 
 Robert W. Henderson, Donald K. Young, Paul W. Hicks, Dallas, Tex., for petitioners.
 Richard A. Solomon, Gen. Counsel, FPC, Peter H. Schiff, Sol., FPC, Washington, D.C., for respondent.
 Before AINSWORTH and SIMPSON, Circuit Judges, and SINGLETON, District judge.
 AINSWORTH, Circuit Judge:
 
 
 1
 Petitioners are four independent producers of natural gas which have been selling for resale in interstate commerce. They petition this Court under Section 19(b) of the Natural Gas Act (15 U.S.C. 717r(b)) to review an order of the Federal Power Commission issued July 7, 1967, 'insofar as those orders suspended the effectiveness of Petitioners' proposed increased rates for five months and precluded Petitioners from collecting the rates to which they were entitled for that period.'
 
 
 2
 Under Section 4(e) of the Natural Gas Act (15 U.S.C. 717c(e)), whenever any new schedule providing for a change in the rate for natural gas is filed with the Commission, it shall have authority to enter upon a hearing concerning the lawfulness of such rate and, pending the hearing, it may suspend the operation of such schedule for a period not longer than five months.[1]
 
 
 3
 The natural gas sales contracts involved are dated May 15, 1959, and provide for an initial price of 20 cents per Mcf, with 2 cents price escalation each four years until a final price of 28 cents is reached. In July 1960 the Commission issued permanent certificates for these sales but they were conditioned on an initial price of 18 cents per Mcf.[2] As a consequence of the decision of the Court of Appeals for the District of Columbia (Public Serv. Com'n of State of N.Y. v. Federal Power Com'n, 111 U.S.App.D.C. 153, 295 F.2d 140, cert. denied, sub nom. Shell Oil Company v. Public Service Commission of State of New York, 368 U.S. 948, 82 S.Ct. 388, 7 L.Ed.2d 343 (1961)), which held that the New York Public Service Commission should have been permitted to intervene in these proceedings, the orders granting the permanent certificates were set aside,[3] and on December 9, 1963, the Commission held that the price for these sales should be 15 cents per Mcf and refunds for the difference were ordered.[4]
 
 
 4
 On June 8, 19 and 20 (two filings), 1967, petitioners filed separate independent producer notices of rate changes, each proposing a fractional increase-- an increase lower than that authorized by the gas sales contract-- from 15 cents to 18 cents per Mcf. Waiver of the statutory five-month period was requested in each filing, to permit the increased rates to go into effect on one day's suspension, thereby making them subject to refund. By its orders of July 7, 1967 and September 1, 1967, the Commission denied petitioners' request for waiver and the increased rates were suspended until November 8, 19 and 20 (two filings), 1967, for the respective cases.
 
 
 5
 Thus all of the increased rates are now in effect, subject to refund, though each of them was suspended for the full five-month period permitted by Section 4(e) of the Act.
 
 
 6
 The present appeal is from the Commission's orders insofar as they suspended the proposed increased rates for a period of five months each. Petitioners aver that the Commission exceeded its authority by varying from the objectives and purposes of Sectiion 4(e) of the Natural Gas Act when it suspended the effectiveness of their rates for five months, and that the Commission acted arbitrarily and abused its discretion since under area pricing the Commission does not make use of the five months' suspension period for inquiry into the reasonableness of the proposed rates and use of the suspension period was, therefore, unnecessary, unlawful and irretrievably deprived petitioners of revenues during the suspension period. Petitioners also aver that the Commission orred in failing to state its reasons for suspending the rates.
 
 
 7
 Petitioners' reference to area pricing grows out of the Commission policy of area price levels for producer filings which was initiated on September 28, 1960.[5] It determined then that the individual company cost-of-service method was not workable or desirable for determining the rates of independent producers. 24 FPC 537, 547. This meant 'that rates would be established on an area basis, rather than on an individual company basis,' Wisconsin v. Federal Power Commission, 373 U.S. 294, 83 S.Ct. 1266, 10 L.Ed.2d 357 (1963). (373 U.S. at 299, 83 S.Ct. at 1269.)[6]
 
 
 8
 Petitioners are parties to the Texas Gulf Coast area rate proceeding instituted by the Commission under Section 5(a) of the Natural Gas Act (15 U.S.C. 717d(a)), and the rates for sales involved in the present case will ultimately be determined in that area rate proceeding so that no additional hearing will be necessary to fix the rates for the separate and individual filings of each of the petitioners here. However, the Commission points out in its brief that the rates involved here were filed too late for specific inclusion in the Texas Gulf Coast area rate proceeding and that a determination of that case will not automatically govern refunds that may have to be made by petitioners. Accordingly, petitioners will have an opportunity to show why a rate different from that determined in the area rate proceeding should apply to the refund period.[7] Petitioners complain that despite the pendency of the area rate case which will ultimately determine the price for these sales, the Commission continues to suspend proposed producer rates for five months as thorgh they were continuing to regulate the filings on an individual basis; that it has made no use of the five-month suspension period invoked and, therefore, that there is no rationality to its policy of suspending the rates in the majority of the filings. Petitioners contend that the suspension period, therefore, is 'meaningless' because, they assert, Section 4(e) was enacted by Congress to maintain the status quo pending actual inquiry into the legality of each rate proposed.
 
 
 9
 It is manifest that an area rate case requires more than five months to be completed by the Commission. However, it cannot be denied that the five-month period is being utilized by the Commission in its investigation and determination of the area rate. We find nothing in the Act, and especially in Section 4(e), that prescribes any difference between the suspension of rates by the Commission which are subject to an area rate case and those which should be considered on a case-by-case or individual basis. The five months' suspension period is a congressional authorization provided by the Natural Gas Act and we are without authority to nullify it. Petitioners assert no constitutional invalidity in the practice but contend that the circumstances warrant a holding by us that the Commission's exercise of the five months' suspension period in the majority of independent producer filings, when an applicable area rate case is pending, is an abuse of discretion. We are unable to agree, for it is apparent that Congress intended to protect consumers from increased rates until the Commission would fix just and reasonable rates, but it considered that a period of five months would be the maximum time permitted.[8]
 
 
 10
 Being of the belief that the Commission has undoubted authority under Section 4(e) to suspend the rates involved and that it has used this time as part of the overall requirement of the time necessary to make a determination of a price in the area proceeding, we affirm the Commission's holdings. The suspension period for petitioners' rates has long since expired and the rates are currently being collected. It will be sufficient for the rights of the parties to await final determination of the Texas Gulf Coast area rate proceeding, upon which finding the Commission may determine by appropriate rule to show cause whether refunds are required, and in what amount, for the period involved, including the period of suspension.
 
 
 11
 We do not agree with plaintiffs that the Commission has not stated its reasons for suspension. Its order was clear that the proposed rates were 3 cents per Mcf higher than the 14-cent rate ceilings for the railroad districts in which petitioners' leaseholds are located.
 
 
 12
 Affirmed.
 
 
 
 [1]
 Section 4(e) of the Natural Gas Act (15 U.S.C. 717c(e)) reads as follows:
 '(e) Whenever any such new schedule is filed the Commission shall have authority, either upon complaint of any State, municipality, State commission or gas distributing company, or upon its own initiative without complaint, at once, and if it so orders, without answer or formal pleading by the natural-gas company, but upon reasonable notice, to enter upon a hearing concerning the lawfulness of such rate, charge, classification, or service; and, pending such hearing and the decision thereon, the Commission, upon filing with such schedules and delivering to the natural-gas company affected thereby a statement in writing of its reasons for such suspension, may suspend the operation of such schedule and defer the use of such rate, charge, classification, or service, but not for a longer period than five months beyond the time when it would otherwise go into effect, and after full hearings, either completed before or after the rate, charge, classification, or service goes into effect, the Commission may make such orders with reference thereto as would be proper in a proceeding initiated after it had become effective. If the proceeding has not been concluded and an order made at the expiration of the suspension period, on motion of the natural-gas company making the filing, the proposed change of rate, charge, classification, or service shall go into effect. Where increased rates or charges are thus made effective, the Commission may, by order, require the natural-gas company to furnish a bond, to be approved by the Commission, to refund any amounts ordered by the Commission, to keep accurate accounts in detail of all amounts received by reason of such increase, specifying by whom and in whose behalf such amounts were paid, and, upon completion of the hearing and decision, to order such natural-gas company to refund, with interest, the portion of such increased rates or charges by its decision found not justified. At any hearing involving a rate or charge sought to be increased, the burden of proof to show that the increased rate or charge is just and reasonable shall be upon the natural-gas company, and the Commission shall give to the hearing and decision of such questions preference over other questions pending before it and decide the same as speedily as possible.'
 
 
 [2]
 See Peoples Gulf Coast Natural Gas Pipeline and Natural Gas Pipeline Co. of America, et al., 24 FPC 106 (1960)
 
 
 [3]
 Hassie Hunt Trust, Operator, et al., 26 FPC 689 (1961), affirmed sub nom. Hunt Oil Co. v. F.P.C., 5 Cir., 1964, 334 F.2d 474
 
 
 [4]
 The Commission also ordered a moratorium on the filing of increased rates prior to January 1, 1968, in excess of 18 cents per Mcf. See 31 FPC 447, affirmed Continental Oil Company v. F.P.C., 5 Cir., 1967, 378 F.2d 510
 
 
 [5]
 See Statement of General Policy No. 61-1, 24 FPC 818. The Supreme Court had earlier held in 1954 that independent producers are natural gas companies within the meaning of the Natural Gas Act, in Phillips Petroleum Co. v. State of Wisconsin, 347 U.S. 672, 74 S.Ct. 794, 98 L.Ed. 1035 (1954)
 
 
 [6]
 In the recent decision of the Supreme Court in Permian Basin Area Rate Cases, 390 U.S. 747, 88 S.Ct. 1344, 20 L.Ed.2d 312 (1968), the constitutional and statutory authority of the Federal Power Commission to adopt a system of area regulation for interstate natural gas sales was upheld, and there is no longer any doubt of the Commission's authority to prescribe maximum area rates, rather than by proceedings conducted on an individual producer basis. This question had not been answered in Wisconsin v. Federal Power Commission, supra
 
 
 [7]
 We are informed by the Commission's brief that the area rate case has been heard by the trial examiner and his initial decision is awaited
 
 
 [8]
 Under the provisions of Section 4(d), an initial thirty days' notice to the Commission and to the public by the natural gas company of a contemplated change of rate is required. This period combined with the possible five-month suspension period makes a maximum total of six months